FLETCHER BARNES, Plaintiff-Appellant, v. MANUEL BARBOSA, Chairperson of the Human Rights Commission, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 84—2517

Opinion filed May 23, 1986.

Ricardo L. Tate and William J. Martinez, both of Legal Assistance Foundation of Chicago, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Fletcher Barnes, a Chicago Transit Authority (CTA) bus driver, appeals from an order of the circuit court of Cook County affirming a determination by the Human Rights Commission that there was no substantial evidence that the CTA discriminated against the plaintiff because of a mental handicap.

We reverse and remand.

We first summarize the procedural history of this case. Plaintiff, who allegedly has developed a carbon monoxide phobia, requested that the CTA place him in its 605 program. That program places disabled employees in an unsalaried administrative holding classification until they can be transferred to a job they can perform. When the CTA denied this request plaintiff filed a discrimination charge against the CTA with the Department of Human Rights. The Department dismissed the charge on the recommendation of its investigator, finding no substantial evidence to sustain the charge. Plaintiff then sought a review of this finding by the Human Rights Commission. In a two to one decision a panel of the Commission affirmed the Department's dismissal. Plaintiff then filed a complaint for administrative review with the circuit court of Cook County. That court affirmed the Commission's decision, expressly adopting the Commission's findings as the court's findings of fact. This appeal ensued.

The Department's investigator did not conduct a fact-finding conference, although authorized to do so by section 7—102(C)(3) of the Illinois Human Rights Act. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(3).) His report was based on interviews with the plaintiff and a CTA attorney, along with documentary evidence. We summarize the pertinent facts available to that investigator.

Plaintiff was hired as a bus driver by the CTA in 1967. On November 15, 1979, he was overcome by carbon monoxide fumes while operating a bus. He was treated for carbon monoxide poisoning at Mt. Sinai Hospital the following day. On January 10, 1980, plaintiff received a neurological exam from a Dr. Shenker, who found him normal and fit to work. Plaintiff had been receiving disability benefits from the CTA since the poisoning incident but these were discontinued on February 7, 1980, apparently because of Dr. Shenker's examination. Plaintiff subsequently filed for workmen's compensation benefits.

On February 13, 1980, plaintiff was seen by another neurologist, Dr. Goetz, for back pain and leg numbness. He recommended continued bed rest and also referred plaintiff to a psychiatrist, Dr. David Brueckner. Dr. Brueckner reported to the CTA (which had requested

plaintiff explain his absence from duty) in a letter dated April 22, 1980, that since Dr. Goetz' March 12, 1980, referral he had seen plaintiff four times in "April [*sic*], 1980 (18, 20, 25, 26) *** [and] twice weekly since then." Thus Dr. Brueckner apparently saw the plaintiff at least eight times. He reported:

> "My psychiatric impression is that Mr. Barnes is suffering from a carbon monoxide phobic reaction which prevents him from working on or around buses.
>
> If you are in need of any further information, please feel free to contact me."

At a subsequent hearing before an Industrial Commission arbitrator Dr. Brueckner reiterated that it was his determination that plaintiff was not capable of functioning in or around a bus because he feared carbon monoxide poisoning and death.

In a May 12, 1980, letter to the CTA's insurance carrier Dr. Alex Arieff reported on his May 5, 1980, examination of the plaintiff. The plaintiff reported to Dr. Arieff that he had been discharged from military service in 1967 in part "for anxiety state." He had been seen as an outpatient by a Veteran's Administration psychiatrist. Plaintiff informed Dr. Arieff that on November 15, 1978, while driving a bus he became dizzy and nauseated and felt faint. Two passengers also became nauseated. He was taken home and then, when his symptoms persisted, was taken to Mt. Sinai Hospital where he was told he had carbon monoxide poisoning. A family doctor prescribed oxygen therapy for him as an outpatient at Walther Memorial Hospital.

Plaintiff told Dr. Arieff he was unable to sleep and had been placed on tranquilizers. He also stated that he was afraid of contact with a bus because of possible carbon monoxide poisoning, but he did want to work at another job.

In his letter Dr. Arieff extensively reported the results of his physical examination. He then concluded:

> "*** I find no objective evidence of any organic disease of the central or peripheral nervous system, or any evidence of outward anxiety, except by history. As far as I am concerned he could work but I do not feel that he wants to go back to bus driving. He states that in driving a bus, it is policy to keep the buses running in the garage, which would cause problems. I think this is a continuation of his previous problem of anxiety and now he has a reason, blaming it on carbon monoxide poisoning. If he wanted to, he certainly could go back to work. I do not question that he should be seen psychiatrically, as he has been, by Veterans."

Subsequently at the Industrial Commission hearing Dr. Arieff testified that he was a neurologist and a psychiatrist. He stated that a lack of neurological problems would not mean plaintiff had no phobia. Also the fact plaintiff did not have an anxiety reaction in Dr. Arieff's office did not mean plaintiff would not have an anxiety reaction around a bus. Dr. Arieff also explained that he recommended that plaintiff be seen psychiatrically because his symptoms were psychiatric and he had obvious anxiety symptoms.

On December 10, 1980, the CTA denied plaintiff's request to be placed in its 605 program. On May 12, 1981, Dr. Brueckner wrote a second letter to the CTA, stating:

> "This is to inform you that my letter *** dated April 22, 1980 still applies to the type of work Mr. Fletcher Barnes can and cannot perform. Namely, he cannot perform work on or around buses, but can perform work anywhere else."

The investigator for the Department filed his report on January 25, 1982. As we have noted, the investigator did not interview any witnesses except the plaintiff and a CTA attorney. Nonetheless the investigator recommended a finding of no substantial evidence of discrimination, apparently based on his determination to accept the psychiatric diagnosis of Dr. Arieff rather than that of Dr. Brueckner.

The report incorrectly states that three psychiatrists indicated plaintiff was normal and capable of performing as a bus driver. In fact the only two psychiatric opinions in the record are those of Dr. Arieff and Dr. Brueckner. The investigator also cited plaintiff's alleged admission to having ridden on buses after the incident as negating plaintiff's phobia claim. But in fact what the plaintiff stated at the Industrial Commission hearing was that part of his treatment by Dr. Brueckner was to attempt to ride buses. He did so and found that he was still nervous and anxious.

The Department accepted their investigator's finding, dismissing plaintiff's charge, and plaintiff then appealed to the Human Rights Commission. On July 19, 1982, in a two to one decision a panel of the Commission issued its order dismissing the cause. The Commission found that plaintiff was mentally handicapped in that he had been diagnosed as having a phobic reaction to carbon monoxide. However the Commission then incorrectly found that Dr. Brueckner "stated on December 10, 1980 that [plaintiff] was capable of working at any job that was in or around a bus." The Commission also noted the adverse findings of Dr. Arieff and Dr. Goetz. It concluded:

> "[Plaintiff] was not denied a employment position with [the CTA] because of his mental handicap (phobic reaction to carbon

monoxide poisoning), but because he failed to provide sufficient evidence to [the CTA] that he was unable to perform his duties as a bus driver."

On administrative review the circuit court adopted these findings *in toto.*

■ For the first time on appeal to this court the defendants (the Human Rights Commission, Manuel Barbosa as chairperson of that body, and the CTA) contend that plaintiff's failure to name the Department of Human Rights as a defendant in his complaint for administrative review deprived the circuit court of jurisdiction. We do not reach the issue of whether the Department of Human Rights should have so named because we find that any such omission was not a jurisdictional defect. (*Massoud v. Board of Education* (1981), 97 Ill. App. 3d 65, 422 N.E.2d 236.) Because this nonjurisdictional issue was not raised in the circuit court it is deemed to be waived on appeal. *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998, 441 N.E.2d 669.

■ We next consider plaintiff's contention that the circuit court erred in affirming the Commission's dismissal of plaintiff's charge of discrimination. The issue before the Commission was whether the Department of Human Rights had substantial evidence that the CTA had discriminated against the plaintiff. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(D).) In reviewing the Commission's determination a court must determine whether the Commission's decision was arbitrary, capricious, or an abuse of discretion. *Klein v. Fair Employment Practices Com.* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370.

■ As we have noted, the Commission found that plaintiff was mentally handicapped by his phobia. However, the Commission then determined that the plaintiff was denied 605 status by the CTA because he failed to provide sufficient evidence of his inability to work as a bus driver. In our view this determination was contrary to the manifest weight of the evidence. Plaintiff's psychiatrist, Dr. Brueckner, had directly notified the CTA of his diagnosis of carbon monoxide phobia and of his conclusion that because of that condition plaintiff could not work in or around buses. Yet the Commission's factual findings establish that it mistakenly believed that Dr. Brueckner had expressed the opposite conclusion, that plaintiff could work in or around a bus. In addition to this error the Commission may also have been misled by errors in the report of the Department's investigator. As we have noted he incorrectly stated that three psychiatrists had found plaintiff capable of performing as a bus driver. In fact the one psychiatrist who suggested this, Dr. Arieff, also indicated that he did believe

plaintiff suffered from anxiety symptoms requiring psychiatric help. The investigator also misrepresented as an admission of a lack of phobia plaintiff's statement that as part of Dr. Brueckner's therapy he had attempted to ride buses after the poisoning incident. We can find no other explanation for the Commission's incongruous decision to accept Dr. Brueckner's diagnosis of carbon monoxide phobia but then reject his determination that because of it plaintiff could not work in or around buses. The Commission was not charged with determining whether discrimination had in fact taken place, only whether plaintiff had presented to the Department substantial evidence of such discrimination. We find that this was established by plaintiff's showing that the CTA apparently chose to arbitrarily accept the written diagnosis of one psychiatrist over that of another, without further investigation. The Commission's finding was contrary to the manifest weight of the evidence, constituted an abuse of discretion, and should have been reversed by the circuit court, which instead adopted all of the Commission's findings, including those that were factually erroneous.

■ One final issue raised by the plaintiff is whether he established substantial evidence that the CTA discriminated against him by refusing to pay him nonoccupational disability benefits. The record establishes, however, that plaintiff was denied these benefits because he was prosecuting a claim for workmen's compensation benefits before the Industrial Commission. The collective bargaining agreement in effect at the time specifically provided that accident and sickness insurance did not cover any period of incapacity for which an employee was entitled to compensation under any workman's compensation act. Although plaintiff also alleged the CTA had previously provided such benefits in derogation of this provision, he presented no proof of this allegation. Accordingly we find that the Commission properly found no substantial evidence of this claim.

For the above stated reasons we reverse the judgment of the circuit court and remand this cause for entry of an order requiring the Commission to make a finding of substantial evidence of discrimination and for further proceedings in conformity with the Human Rights Act. Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*

Reversed and remanded with directions.

PINCHAM, J., concurs.

PRESIDING JUSTICE SULLIVAN, dissenting:
I disagree with the action of the majority in reversing the judg-

ment appealed from. The director of the Department of Human Rights initially made a determination that there was no substantial evidence of a violation of plaintiff's human rights. Its ruling was then affirmed by the Illinois Human Rights Commission and on administrative review the circuit court affirmed the decision of the Commission. The majority has found that the Commission's ruling and the decision of the circuit court were against the manifest weight of the evidence.

It appears to me, however, that the majority's finding has no basis in the record other than the unsupported statement of plaintiff that he once had carbon monoxide poisoning and as a result was not able to work around buses. Weighed against this statement were the opinions of Doctors Goetz, Shenker and Arieff, each of whom reported that plaintiff was normal and fit for work. The majority in reversing, however, disregards these opinions and relies primarily on the report of Dr. Brueckner which gives little, if any, support to plaintiff. Dr. Brueckner's report is in a single paragraph, the entirety of which is as follows:

> "My psychiatric impression is that Mr. Barnes is suffering from a carbon monoxide phobic reaction which prevents him from working on or around buses."

The majority fails to realize, however, that Dr. Brueckner's "impression" could only have been based on a statement given him by plaintiff as Dr. Brueckner conducted no tests or examinations and made no findings of any kind to support his "impression" that plaintiff had a carbon monoxide phobic reaction which prevented him from working on or around buses. Thus, from the record the only possible basis for his "impression" was plaintiff's statement that he once had carbon monoxide poisoning and as a result he feared working around buses.

It is noted that Dr. Arieff, a neurologist and a psychiatrist, had available at the time of his evaluation of plaintiff the reports of Doctors Goetz, Shenker and Brueckner, and he also obtained a lengthy case history from plaintiff. It is clear from the report of Dr. Arieff that he conducted a thorough examination of plaintiff and then submitted a detailed, three-page report,[1] stating in his summary:

> "I find no objective evidence of any organic disease of the central or peripheral nervous system, or any evidence of outward anxiety, except by history. As far as I am concerned he could work but I do not feel that he wants to go back to bus driving. He states that in driving a bus, it is policy to keep the buses

---

[1]The majority also stated that Dr. Arieff "extensively" reported the results of his physical examination.

running in the garage, which would cause problems. I think this is a continuation of his previous problem of anxiety and now he has a reason, blaming it on carbon monoxide poisoning. If he wanted to, he certainly could go back to work."

The previous problem of anxiety referred to by Dr. Arieff appears in plaintiff's case history in which he told Dr. Arieff that he had been injured in Vietnam and subsequently had been an outpatient at the Veterans Administration Hospital from which he was discharged with a 10% disability for anxiety state and a recovered skull fracture. It also appears that plaintiff separately told Doctors Shenker and Arieff that he had been a patient in Mt. Sinai Hospital where he was told that he had carbon monoxide poisoning. He did not say who told him this and there is nothing in the record here which gives any indication that he once had carbon monoxide poisoning. In fact, Dr. Shenker stated that no such diagnosis was made at Mt. Sinai Hospital. Thus, considering the opinions of Doctors Goetz, Shenker and Arieff and the fact that plaintiff presented (a) only his unsupported statement that he had carbon monoxide poisoning and (b) the one paragraph statement of Dr. Brueckner, whose "impression" therein could only have been based on plaintiff's statement to him, it is clear to me that the decision appealed from was not against the manifest weight of the evidence. I would affirm the judgment.