**Stewart LEMON and Steve Luckett, Plaintiffs,**

**v.**

**Joyce E. TUCKER, Defendant.**

**No. 84 C 4021.**

United States District Court, N.D. Illinois, E.D.

Sept. 21, 1988.

Jonathan K. Baum, Gary H. Palm, Edwin F. Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Herbert A. Bates, Chicago, Ill., for amicus curiae Legal Redress Committee, NAACP.

Jeffrey W. Finke, Asst. Atty. Gen. of State of Ill., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This is a class action suit challenging the constitutionality of procedures for processing charges under the Illinois Human Rights Act, Ill.Rev.Stat. ch. 68, paras. 1–101, *et seq.* ("IHRA" or "the Act"). Plaintiffs in this 42 U.S.C. Section 1983 suit seek declaratory and injunctive relief against defendant Joyce Tucker individually and in her official capacity as Director of the Illinois Department of Human Rights ("IDHR" or "the Department"). Plaintiffs' essential claim is that Tucker is depriving them of their state-created property interests in their IHRA causes of action without due process of law in violation of the Fourteenth Amendment to the United States Constitution. Tucker denies that procedures under the IHRA deny plaintiffs procedural due process, especially in light of new amendments to the Act giving claimants more procedural protections. Defendant brought a motion to dismiss this lawsuit which was denied as to the due process claims by Judge Getzendanner of this court in 1985. *Lemon v. Tucker,* 625 F.Supp. 1110 (N.D.Ill.1985). The parties have engaged in discovery and now bring cross motions for summary judgment.

### I. *Background*

A. Illinois Human Rights Act Procedures.

The IHRA was enacted by the State of Illinois pursuant to a declared public policy:

> To secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations, and to prevent sexual harassment in employment and sexual harassment in higher education.

Ill.Rev.Stat. ch. 68, para. 1–102(A). The Act entitles a person who believes he has been the victim of discrimination ("the com-

plainant") to file a charge with the Illinois Department of Human Rights. Ill.Rev. Stat. ch. 68, para. 7–102. The complainant has a cause of action based on a list of discriminatory acts prohibited by the IHRA. *Id.* at paras. 2–102, 4–102, 5–102, 6–101. During the pendency of the instant lawsuit, Illinois twice amended the Act. One set of amendments took effect on September 16, 1985 and the second on September 24, 1987.

Under the original Act, the complainant began by filing a charge containing allegations about the time, place, and facts surrounding the alleged violation. The amendments taking effect September 24, 1987 provide for a more extensive "pleading" procedure. Thus, in addition to complainant filing a charge, the respondent must file a response to the allegations in the charge. Further, the complainant has the opportunity to reply to the response. Both parties have the right to supplement their response or reply at any time during the investigation. Ill.Rev.Stat. ch. 68, para. 7–102(B).

Once the complainant has filed a charge, the Department conducts an investigation to determine whether substantial evidence of an IHRA violation exists. The Department is authorized, but not required, to compel the attendance of witnesses and the production of documents. Ill.Rev.Stat. ch. 68, para. 7–102(C).

In many cases, the parties are entitled to an informal fact-finding conference in front of a Department investigator. This conference is not a formal hearing and no cross-examination of witnesses is provided. Under the version of the Act that was in effect when this suit was filed, the IDHR had the discretion to conduct a fact-finding conference within the first 120 days after the charge was filed and thereafter if the parties consented. Under the 1987 amendments, the IDHR *must* provide a fact-finding conference on all charges that have been pending longer than 210 days. Ill. Rev.Stat. ch. 68, para. 7–102(C)(4).

Once the investigation is concluded, the Department prepares a written report which is sent to the Director of the Department of Human Rights, defendant Tucker. After reviewing the report, defendant makes a determination whether there is substantial evidence that a civil rights violation has occurred. Ill.Rev.Stat. ch. 68, para. 7–102(D)(2). If defendant finds substantial evidence of a violation, she designates a Department attorney to attempt to settle the matter through conference and conciliation. If no settlement is effected, the Department files a complaint with the Illinois Human Rights Commission ("IHRC" or "Commission"). The Commission will then conduct a full evidentiary hearing on the matter and award such relief as is appropriate.

If the Director determines that no substantial evidence of a violation exists, she dismisses the charge. Within 30 days of the dismissal, the complainant can file a request for review with the Commission. Upon review, the Commission "may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department...." Ill.Rev.Stat. ch. 68, para. 8–104(B). In its discretion, the Commission may also designate a hearing officer to conduct a hearing into the factual basis for the matter at issue.

If the Commission denies the complainant's request for review the complainant can take an appeal to the Illinois Appellate Court. The appellate court's review is limited in scope and the Commission's findings of fact are sustained unless contrary to the manifest weight of the evidence. Ill.Rev. Stat. ch. 68, para. 8–111. The appellate court also has discretionary judicial remand authority if the court feels that the administrative record needs to be supplemented.

**B. History of This Litigation.**

This action was commenced as a class action on June 5, 1984. By order dated July 16, 1987, Judge Getzendanner certified the plaintiffs' proposed class. The class consists of:

> all persons who currently have charges of discrimination pending with the Illinois Department of Human Rights

("IDHR") or requests for review pending before the Illinois Human Rights Commission ("IHRC"). The class further consists of all persons who will file charges with the IDHR after commencement of this action (dated June 5, 1984). The [ ] class does not include those persons whose charges have been disposed of by a finding of substantial evidence. *Memorandum Opinion and Order,* No. 84 C 4021, slip op. at pp. 1, 2, July 16, 1987. The class description was later modified to take into account amendments to the Act which provide that after September 16, 1985, all claimants whose claims have been on file with the Department for more than 300 days with no disposition are entitled to a full evidentiary hearing before the Commission. Judge Getzendanner excluded from the class all persons who are entitled to that full evidentiary hearing, that is, "those persons who filed charges after September 16, 1985 and whose charges were not fully processed within 300 days of their filing." *Order of Judge Getzendanner,* No. 84 C 4021, August 10, 1987. In sum, the plaintiff class includes all persons who had charges or requests for review pending at the time this action was commenced and all those who subsequently filed such actions, *excluding* those who filed after September 16, 1985 and whose claims were still pending after 300 days, *and excluding* any claimants whose charges were disposed of on findings of substantial evidence.

Plaintiffs filed a two-count complaint. The first count alleged a procedural due process violation while the second count alleged an equal protection violation. Pursuant to a motion to dismiss filed by the defendant, Judge Getzendanner dismissed Count II, the equal protection count. In a published opinion Judge Getzendanner declined to dismiss the due process claim, Count I, finding that the count does state a cause of action. *Lemon v. Tucker,* 625 F.Supp. 1110 (N.D.Ill.1985).

Count I alleges that plaintiffs possess a property right in their IHRA cause of action. Plaintiffs claim that the Department deprives plaintiffs of this property right without due process of law by dismissing their charges for lack of substantial evidence without sufficient procedural protections. Specifically, plaintiffs allege that the Department's procedures are deficient in the following respects:

(a) Complainants do not have the right to have an adjudicatory hearing.

(b) Complainants do not have the right to know the evidence against them.

(c) Ex parte contacts are permitted.

(d) Complainants do not have the right to cross-examine respondent's witnesses.

(e) Complainants do not have the right to present all evidence in their favor.

(f) Complainants do not have the right to make or have made a verbatim record of testimony or to have a decision made solely on the basis of the record.

(g) Complainants do not have the right to compulsory process for the production of witnesses or documents.

(h) Complaints do not have the right to notice of their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, under the Illinois Human Rights Act, under IDHR Rules and Regulations, and under IDHR policies and practices.

*Second Amended Complaint,* Count I, ¶¶ 10(a)–(h).

Judge Getzendanner concluded that the procedures guaranteed to complainants for investigating charges for substantial evidence and review of dismissals under the IHRA were sufficiently offensive to due process to survive a motion to dismiss. After evaluating plaintiffs' claims under the ruberic of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the governing approach for determining what process is due, Judge Getzendanner held as follows:

The question here is the adequacy of the IHRA investigative procedures. Under a literal reading of the relevant statutory and regulatory provisions, at no time during investigative proceedings is a complainant assured the right to present reasons against dismissal. It is therefore conceivable that plaintiffs will be able to prove that this procedural inadequacy is not only permitted by statute,

but actually implemented by Department and Commission practice. It is also conceivable that plaintiffs will be able to show that the burden on the government of allowing complainants to present reasons is insubstantial. Because of the conceivability of this set of facts, the proof of which would establish a due process violation under *Eldridge*, the defendant's motion must be denied. Of course, if defendant can show that the IHRA has been interpreted and implemented so as to afford each complainant with this fundamental procedural protection, then due process has not been violated.

*Lemon v. Tucker, supra,* 625 F.Supp. at 1115.

The parties now bring cross motions for summary judgment. Plaintiffs' motion is styled a "Motion for Partial Summary Judgment on the Issue of Liability," wherein plaintiffs seek a ruling that defendant is depriving them of due process in two specific ways:

(1) by dismissing their discrimination charges witout allowing them to view the evidence submitted by the respondent;

(2) by dismissing the discrimination charges which involve credibility determinations without a full evidentiary hearing.

Further, plaintiffs purport to "reserve the right to address the issue of whether defendant is liable to them for other violations of due process," presumably at some later date. *See* Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability at p. 5 n. 1.[1]

Defendant cross claims for summary judgment. Defendant argues that the due process standards for this type of claim are minimal and that the procedures guaranteed by the Act, especially those procedures added by the amendments, are sufficient to satisfy plaintiffs' due process rights.

1. Because defendant cross-motions for summary judgment, the court reaches the question whether defendant has violated plaintiffs' due process rights in any other way. As is more

## II. *Analysis*

### A. Plaintiffs Have a Property Interest in Their Causes of Action.

■ The first part of the familiar two-part procedural due process analysis asks whether the plaintiff was deprived of a protected interest. In this case, the answer to that question is clear. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court held that a cause of action is a species of property protected by the due process clause. Further, in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court held that the right to use the adjudicatory procedures of the Illinois Fair Employment Practices Act (a predecessor to the IHRA at issue here) is a protected property interest similar to the cause of action found protectable in *Mullane.*

Once the threshold question—whether plaintiffs possess a protectable property interest—is answered in the affirmative, the due process clause is implicated and any procedure involked to deprive the plaintiff of his interest must pass constitutional scrutiny. The Court recognizes that

> the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether—just as it can amend or terminate its welfare or employment programs.

*Logan v. Zimmerman Brush Co., supra,* 455 U.S. at 432, 102 S.Ct. at 1156. However

> while the legislature may elect not to confer a property interest, ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards ... [T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms.

fully discussed below, the court finds that the Act's amended procedures do not deny plaintiffs due process.

*Id., quoting Vitek v. Jones,* 445 U.S. 480, 490–91 n. 6, 100 S.Ct. 1254, 1262–63 n. 6, 63 L.Ed.2d 552 (1980).

Further, the presence of alternate remedies to redress civil rights violations does not relieve the state from complying with the due process clause. In this case, defendant points out that many claims brought under the IHRA could alternatively be adjudicated by state or federal courts under the authority of 42 U.S.C. Section 1981 or Title VII. *See* Defendant's Memorandum in Support of Her Motion for Summary Judgment and Motion to Amend Prior Class Certification Ruling at 3.[2] The Seventh Circuit has clearly rejected any argument that the presence of alternative remedies relieve the state from the burden of complying with due process. In *Bennett v. Tucker,* 827 F.2d 63 (7th Cir.1987), a case involving a procedural due process challenge to actions of the same defendant, the court stated that:

> the existence of an alternate remedy [is] no bar to an action in which the plaintiff is challenging an " 'established state procedure' that destroys his entitlement without according him proper procedural safeguards."

*Id.* at 72, *quoting Logan v. Zimmerman Brush Co., supra,* 455 U.S. at 436, 102 S.Ct. at 1158. Having determined that defendant must satisfy due process requirements, we turn to the second part of the due process analysis—what does the Clause require in this case?

**B. What Process is Due?**

The analysis for determining what process is due involves the accommodation of the competing interests involved. As laid down by the United States Supreme Court:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

Judge Getzendanner analyzed the competing interests in her published opinion denying the motion to dismiss. *See Lemon v. Tucker, supra,* 625 F.Supp. at 1113–1114. The court concluded that the interests of the individual in vindicating their civil rights and obtaining redress for their violation with damages, reinstatement, or some other form of relief were substantial and significant. The court therefore gives substantial weight to the interests of the individuals in a fair hearing for their charge.

■ The interest of the government in this case deserves some further analysis. The state has set up a special remedy for victims of all types of discrimination. Instead of granting these victims a cause of action in state court, the state has chosen to provide an alternate more informal procedure where a state agency assists claimants, most of whom proceed *pro se,* in resolving their claims. Defendant states that more than 5,000 claims per year are filed with the Department. The purpose of conducting an initial investigation is to determine at the outset whether charges have some merit. Defendant indicates that if the Department afforded each and every complainant with a full evidentiary hearing, the cost would be prohibitive—at least three times the Department's present budget. The present investigative procedure ensures *pro se* complainants that their charges will be investigated in a largely non-adversarial context. Both defendant and *amicus curie* National Association for

---

**2.** The court notes that not all claims pursued under the Act can be redressed by alternate remedies. For example, complainants who allege discrimination on the basis of a handicap cannot sue under Title VII, 42 U.S.C. Sections 2000e, *et seq.,* because that statute affords no remedy for such discrimination. Further, the Act offers measures of relief (*e.g.,* damages for emotional distress) unavailable in a Title VII action.

the Advancement of Colored People ("NAACP") urge that complainants are better off under a non-adversarial procedure, especially when respondents are more likely to be able to afford counsel.

The Supreme Court recently gave "great weight" to a similar government interest in providing a more simplified, non-adversarial system for adjudicating claims. In *Walters v. Nat. Assn. of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), plaintiffs were certain veterans groups who objected to the administrative procedure for granting service-connected death or disability benefits to veterans. In particular, plaintiffs therein challenged the requirement that attorneys fees for counsel representing veterans could not exceed $10 per claim. The veterans groups argued that the fee limitation provision denied them due process of law because they were unable to secure the services of attorneys to represent them on their claims for such small remuneration. Although the district court held that the fee limitation provision denied the veterans due process of law, the Supreme Court reversed finding that

> the destruction of the fee limitation would bid fair to complicate a proceeding which Congress wished to keep as simple as possible ... The flexibility of our approach to due process cases is intended in part to allow room for other forms of dispute resolution; with respect to the individual interests at stake here, legislatures are to be allowed considerable leeway to formulate such processes without being forced to conform to a rigid constitutional code of procedural necessities.

*Id.*, 473 U.S. at 326, 105 S.Ct. at 3192. Likewise, in this case, the court finds that the government's interest in providing victims of civil rights violations with a simple, non-adversarial procedure for determining whether claims have merit at the outset is entitled to substantial weight.

Having examined the interests of the individual and the government, we turn to what Judge Getzendanner concluded was the determinative factor of the *Eldridge* formula as applied to this case:

the likelihood that, under existing procedures for investigating a charge of a violation, one's right to the IHRA machinery (conciliation, hearing and relief) will be erroneously terminated, and the possibility that additional procedures will enhance accuracy.

*Lemon, supra,* 625 F.Supp. at 1114.

Over the past decade since *Eldridge* was decided, the Supreme Court has had the opportunity to apply the *Eldridge* formula to several different factual scenarios to evaluate which procedural protections were mandated in that particular case. The Court has not, however, identified general procedural requirements for typically recurring situations. *See* L. Tribe, American Constitutional Law, § 10–13, p. 717 (2d Ed. 1988). Instead, the Court has repeatedly admonished that:

> the processes required by the Clause with respect to the termination of a protected interest will vary depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur.

*Walters v. Nat. Assn. of Radiation Survivors, supra,* 473 U.S. at 320, 105 S.Ct. at 3189; *see also Mathews v. Eldridge, supra,* 424 U.S. at 339, 96 S.Ct. at 904 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands"), *quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ Although the Supreme Court has not established general guideines defining the procedures mandated in different situations, the Court has held that, at a minimum, due process requires notice and an opportunity to respond: "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Two fairly recent Supreme Court cases discuss in detail just what procedures notice and an opportunity to be heard require. *Cleveland Bd. of Education v. Loudermill, supra,* is a case involving claims by two Civil

Service employees who argued they were denied due process when they were terminated from their employment for cause. The plaintiffs there urged that they were entitled to a pre-termination hearing. The Court held that an employee is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to termination. After termination, the employees had access to a full evidentiary hearing. The Court held that the employees' claims should not be dismissed because they alleged that they never had an opportunity to submit their side of the story.

In *Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), the Supreme Court examined the procedures preceding a government order to temporarily reinstate a terminated employee pursuant to a federal whistle blowers protection statute pending an evidentiary hearing regarding the termination. The Court held that,

> minimum due process for the employer in this context requires notice of the employee's allegations, notice of the substance of the relevant supporting evidence, an opportunity to submit a written response, and an opportunity to meet with the investigator and present statements from rebuttal witnesses.

*Id.* 107 S.Ct. at 1748.

■ In this case, plaintiffs allege that the Act fails to provide them with an opportunity to present their side of the case, including reasons why substantial evidence of a violation exists, at any point in the IHRA proceedings. The court previously identified in its ruling on the motion to dismiss that this allegation stated a due process violation. The court observed that the provisions of the IHRA only provided complainants with one opportunity to present information to the decision-maker. This opportunity is the initial charge the

claimant files with the Department. The defendant does not dispute that prior to September 24, 1987, the only input claimants were *guaranteed* was their statement in the initial charge.[3] The court finds that those class members whose claims were subject to the procedures existing before September 24, 1987, and who never were afforded an opportunity to present reasons why their charges should not be dismissed, have been denied due process. Accordingly, all such persons' claims should be reopened.

■ The new amendments to the Act, which took effect September 24, 1987, established a "pleadings" procedure for all charges filed with the Department. Under this procedure, the complainant files a charge, the respondent files a response, and the complainant can file a reply. Either party can amend their pleadings at any time during the investigation. This procedure adds two protections complainants were previously denied. First, complainants now have access to a verified response by the respondent to the claimant's charge. Thus, the claimant is notified of any defenses the respondent may be offering to the Department investigator. Second, claimants have an opportunity to reply to the respondent's defenses and present reasons why claimant's charge should not be dismissed. Further, claimant can supplement his reply at any time and present new or more expanded information to the investigator. The court finds that these amended procedures do guarantee claimants a meaningful opportunity to present their side of the story and thus cure the due process violation the court previously addressed.

Plaintiffs argue that the "pleading" procedure in the amended Act is still deficient because the pleadings fail to provide complainants with discovery of the factual details underlying the respondent's defenses.[4]

---

**3.** The court notes that in many cases complainants are afforded a fact-finding conference where complainants may have an opportunity to present their side of the case. Because this conference is not guaranteed nor provided to all complainants, it is basically irrelevant to our due process analysis.

**4.** Plaintiffs explain that the model of proof in discrimination cases places a burden on complainants to prove that respondent's position is

Plaintiffs point out that the Supreme Court in *Cleveland Bd. of Education* and *Brock* indicated that those plaintiffs were entitled to access to the "substance of the relevant supporting evidence" of the opposing party. *Brock* at 1749. Plaintiffs here thus seek access to *all* documents respondent submits to the Department, and suggest that both sides should be permitted to review the Department's investigation file.

■ The court finds that access to *all* documents respondents submit to the Department and access to the Department's investigation file go beyond what due process requires in this situation. Under the amended Act, complainants are entitled to recive a "response" from the respondent which contains respondent's answers to claimant's allegations. Claimants thus receive notice of the substance of respondent's defenses. The court can see little benefit in providing claimants with the documentation supporting the defenses during this initial investigation stage, especially in light of the carefully crafted legislative scheme placing responsibility for investigating the charge with the Department. If, as plaintiffs fear, respondents abuse the process by answering that they are "without sufficient information to form a belief with respect to such allegation," when in fact respondents have formulated a belief or defense to the allegation, then claimant's cure is to raise the issue in the Act's appeal process. Likewise, the court is unwilling to provide the parties access to the investigation file. The file could contain a wide array of information which is better left confidential during the investigation, including internal Department work product. Further, the court notes that the parties are given access to the file once a claim has been dismissed for lack of substantial evidence. Thus, complainant can address any new information or irregularities he discovers in the file in a request for review with the Commission.

To the extent the *Brock* and *Cleveland Bd. of Education* cases may appear to

require some discovery of factual details, the court finds those cases distinguishable. Most importantly, both of those cases addressed pre-deprivation procedures where the deprivation would cause an immediate change in the status quo. In *Brock,* the employer was forced to re-employ a terminated employee. The Court found the employer entitled to access to the substance of the opposing party's evidence and an opportunity to answer that evidence prior to the government ordering temporary reinstatement. In *Cleveland Bd. of Education,* the Court examined the process due a Civil Service employee before the employee could be terminated. The threatened deprivation was a real and immediate change in the status quo—termination from the job.

In contrast, in this case, a dismissal of a charge for lack of substantial evidence does not result in an immediate and drastic change in the status quo. Certainly, claimants are deprived of a substantial and important property right and, in a sense, the deprivation is more final because claimants are not guaranteed a post-deprivation evidentiary hearing. However, claimants still have the ability to challenge any of the Department's determinations before the Commission and, if dissatisfied with that result, can proceed to the Illinois Appellate Court. Claimant's status quo was already most drastically changed when the events underlying the charge occurred. This case addresses only the procedures mandated for deciding whether a resulting cause of action is meritorious. The post-deprivation appeal procedure thus guarantees that even this "final" dismissal of the charge is reviewable.

■ Plaintiffs seek summary judgment that they are entitled to one other procedural protection. Plaintiffs urge that in the case of complainants whose charges raise material credibility disputes, due process requires that they be afforded a full evidentiary hearing. Plaintiffs do not contend that an evidentiary hearing is required

merely pretextual. Thus plaintiffs need access to respondent's evidence in order to attack it. This position ignores the role of the Department

investigator to examine the evidence on both sides to determine if there is substantial evidence of all elements of a claim.

in all IHRA charge cases; only that due process requires a hearing in cases where a credibility dispute about a material fact emerges. What plaintiffs essentially seek in an evidentiary hearing is the opportunity to cross-examine the respondent's witnesses. Plaintiffs rely in large part on *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), where the Supreme Court held that an evidentiary hearing was required before welfare benefits could be terminated. The Court commented that when determinations "turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Id.* at 269, 90 S.Ct. at 1021. The Court later distinguished the welfare benefits decision in *Goldberg* from other administrative decisions, such as the disability benefits at issue in *Mathews v. Eldridge, supra,* because credibility and veracity were much more likely to be in issue in a welfare case than in cases which turn on medical or expert testimony. Plaintiffs liken this case to *Goldberg* because a discrimination charge is likely to involve issues of credibility and veracity where "the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy" is involved. *Goldberg, supra,* 397 U.S. at 270, 90 S.Ct. at 1021, *quoting Greene v. McElroy,* 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413–14, 3 L.Ed.2d 1377 (1959).

Defendant responds that the Department does not determine matters of credibility. Instead, the defendant points to the Department's policy guide which states that a substantial evidence finding should be made in cases where "the determination boils down to an assessment of the witnesses' credibility.... unless the witness statements supporting one view are inherently implausible, this is a determination that should be made only at a hearing, after full examination and cross-examination of the witnesses under oath." Memorandum in Support of Plantiffs' Motion for Partial Summary Judgment on the Issue of Liability at p. 40, quoting Tucker Dep., 9/24/86, Tr. 284; Tucker Dep. Ex. No. 7. Defend-

ant urges that any failure to follow this policy can be reviewed on appeal. *See Barnes v. Barbosa,* 144 Ill.App.3d 860, 865, 98 Ill.Dec. 497, 494 N.E.2d 619 (1st Dist. 1986) (substantial evidence established "by plaintiff's showing the [respondent] apparently chose to arbitrarily accept the written diagnoses of one psychiatrist over that of another, without further investigation.")

There is no disagreement between the parties that cases which turn on issues of credibility should be resolved after a full evidentiary hearing. The dispute seems to be whether in practice the Department does decide credibility issues without a hearing and, if so, what is the appropriate cure. Neither side argued that the Department's policy guide is binding on the Department. Thus, there does not appear to be any binding prohibition preventing the Department from making credibility determinations at the investigative stage. Nonetheless, this court is convinced that the opportunity for any Department finding of lack of substantial evidence to be reviewed by both the Commission and the Illinois Appellate Court adequately guard against the Department making erroneous determinations based on credibility issues. The review before the Commission is a *de novo* review and the Commission is not bound by factual determinations made at the Department level. We believe the concept of "substantial evidence" encompasses the possibility that claimant and respondent will have differing versions of an event. So long as complainant puts forth evidence that is not inherently unbelievable, complainant will be entitled to a finding of substantial evidence and the appellate procedure will ensure that the Department does not make unwarranted credibility determinations. As the Supreme Court recently stated in *Brock v. Roadway Exp., Inc., supra,* 107 S.Ct. at 1749:

the primary function of the investigator is not to make credibility determinations, but rather to determine simply whether reasonable cause exists to believe that the employee has been discharged for engaging in protected conduct ... Final assessments of the credibility of support-

ing witnesses are appropriately reserved for the administrative law judge, before whom an opportunity for complete cross-examination of opposing witnesses is provided.

The procedure under the IHRA is much the same. The preliminary investigator is not charged with making credibility determinations. The court thus finds that the absence of a full evidentiary hearing with cross-examination does not deprive complainants under the IHRA of due process of law.

### III. *Conclusion*

The court finds that the procedures of the amended Act adquately satisfy plaintiff's due process rights. To the extent that the plaintiff class includes individuals whose claims are not governed by the amendments, those claims should be reopened and those claimants afforded the procedures of the Act as amended. Accordingly, plaintiffs' motion for partial summary judgment is granted in part and denied in part. Defendants' motion for summary judgment is granted.