COMMUNITY MENTAL HEALTH COUNCIL, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (5th Division)   Nos. 1—88—2991, 1—89—0427 cons.

Opinion filed June 30, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant.

Donald Hubert & Associates, of Chicago, for appellee.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant Department of Revenue of the State of Illinois (Department) appeals from an order of the trial court reversing its decision denying a charitable tax exemption on certain real estate located in Cook County to plaintiff Community Mental Health Council, Inc. (Council) (appeal No. 88—2991). The Department also filed a notice of appeal from a later order entered by the trial court requiring it to refund $5,827.74 to the Council for taxes it paid on the subject property in 1986 (appeal No. 89—0427). In its first appeal, the Department argues that (1) this court must dismiss the appeal because the Council failed to name the Community Mental Health Foundation (Foundation) as a party defendant in its administrative review action in the trial court and (2) the trial court erred in finding that the Council was entitled to a charitable tax exemption on its property. In its second appeal, the Department did not file a brief and, on an oral motion during argument before this court, it moved to have its brief in the first appeal stand as its brief in the second appeal. We granted the Department's motion. The issue involved therein will be discussed later in this opinion.

The record discloses that the Council was incorporated as a not-for-profit corporation on February 13, 1975. Its purpose is to "promote positive mental health" within a community on the south side of Chicago and, accordingly, it is governed by the Illinois Community Mental Health Act (Ill. Rev. Stat. 1987, ch. 91½, par. 300.1 et seq.). The Council receives 95% of its funding for operation of its services from an annual grant provided by the Department of Mental Health. The Council subsequently created the Foundation as a "holding com-

pany," since under the terms of the annual operation grant received from the Department of Mental Health the Council may not, among other things, use it to purchase real estate or make mortgage payments.

On July 14, 1986, the Council entered into a contract with Northwestern University to purchase the property at issue here (a three-story building with a full basement and two parking lots located at 8704 South Constance in Chicago), subject to a lease held by Illinois Bell which was to expire on December 31, 1986. The property was bought to house the Council's headquarters. The Council's $100,000 down payment on the property was made with funds from a reimbursable grant received from the Department of Mental Health. The grant agreement provides that should the building generate any income in excess of the Council's expenses, such excesses are to be remitted to the Department of Mental Health until the $100,000 is repaid. At the time of closing, the Council signed a conveyance nominating the Foundation as "purchaser of the property" and the property was accordingly deeded to the Foundation on September 15, 1986.

At the time of the purchase of the property, Illinois Bell's monthly rental payment on the entire property to Northwestern was $4,382. Based on the real estate sale contract between the Council and Northwestern, the Foundation was required to make a monthly mortgage payment in the amount of $5,999.16, beginning October 1, 1986, plus a monthly $4,000 payment to an escrow account to pay a balloon payment of $246,085.73, which was to be paid at the end of five years.

From September 15 through December 31, 1986, Illinois Bell used only one-third of the building and the two parking lots; two-thirds of the building remained vacant. At that time, Illinois Bell agreed to allow the Council full use of the vacant portion of the building, notwithstanding that it was paying rent on the entire building. The Council then began preparations to renovate the building for its purposes; its development staff, architects, and 12 different contractors frequented and had unfettered access to the vacant two-thirds of the building. In January 1987, Illinois Bell vacated the building. The Council then took possession of the building and parking lots and began paying rent to the Foundation.

The Council subsequently applied to the Board of Tax Appeals for a charitable tax exemption on the property from September 15 to December 31, 1986. The Board granted it a partial exemption, but the Department later reversed the Board. The Council then filed an administrative review action in the circuit court of Cook County. The court reversed the Department's decision and remanded the case back

to the Department for a hearing to calculate the amount of the exemption the Council was entitled to on the building and the two parking lots. The Department then filed an appeal from this order (appeal No. 88—2991).

On January 9, 1989, after the agency's hearing on the amount of tax exemption due the Council, the trial court entered an order requiring the Department to refund $5,826.74 to the Council for taxes paid on the property in 1986 pursuant to a stipulation between the parties that the exemption for the building amounted to $5,426.36, for the rear parking lot, $290.70, and for the adjacent parking lot, $109.68. The Department then filed a notice of appeal from the order (appeal No. 89—0427) and subsequently moved to consolidate the appeal with appeal No. 88—2991, which this court granted.

■■ We reject the Department's first argument in appeal No. 88—2991 that the appeal must be dismissed because the Council did not name the Foundation as a party defendant in its administrative action as required by section 3—107 of the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—107). Section 3—107 provides that an "administrative agency and all persons, other than the plaintiff, who were *parties of record* to the proceedings before the administrative agency shall be made defendants." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 3—107.) We first observe that even though the Department now argues that the Foundation was a necessary party in the Council's administrative action, the Department itself did not name the Foundation as a party in the hearing in which it denied the Council an exemption on its property, notwithstanding the fact that it had served the Foundation with notice of the hearing. The Department's argument that the Foundation "participated" in the hearing does not a party of record make; in fact, no witness even appeared solely on behalf of the Foundation. This point is established by reference to the Department's administrative law judge's statements in his "Recommended Disposition" where, under the caption of "APPEARANCES," he referred to the witnesses and attorneys who appeared before him as appearing "on behalf of the Community Mental Health Council, Inc.," and referred to himself as having appeared on behalf of the "Illinois Department of Revenue." Thus, he did not state that the Foundation was a party of record. Since the Foundation was not a party of record, as the term is used in section 3—107, the Council was not statutorily required to make the Foundation a defendant in its administrative review action.

■■ Secondly, as the Council further points out, the Department's brief is incorrect in stating that "the tax was levied against the Foun-

dation as legal title holder of the property" and, therefore, (1) the Foundation was a necessary party to the administrative review action and (2) the trial court lacked subject matter jurisdiction in the absence of the Foundation as a party to review its decision denying the tax exemption. (See *People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 461 N.E.2d 505.) In fact, the face of the tax bill shows the taxpayer to be "COMMUNITY MENTAL HEALTH"; it does not indicate whether the taxpayer is the Council or the Foundation. In addition, the Department's assertion is inconsistent with a notation made by its law judge who referred to the Council as the taxpayer, *i.e.*, the Department's exhibit 2F was marked at the direction of the judge as "Taxpayer: COMMUNITY MENTAL HEALTH COUNCIL, INC." Finally, we note that a failure to name a necessary party is not a jurisdictional defect so that the issue will be deemed waived on appeal if not raised in the trial court. (*Barnes v. Barbosa* (1986), 144 Ill. App. 3d 860, 494 N.E.2d 619.) The Department clearly did not raise this issue in the trial court and it therefore cannot be raised on appeal under the circumstances here.

Thirdly, it would have been absurd for the Council to name the Foundation as a party defendant in the administrative review action because it would in effect be suing itself since the Foundation is merely its alter ego, having no interests in conflict with the Council's. That this is the case, as pointed out by the trial court, we need only look to the similarity of the names of both corporations—Community Mental Health *Council* and Community Mental Health *Foundation*— as reflecting their close relationship; the Foundation's bylaws provide that it is created solely to hold title to the Council's property and to collect income therefrom and surrender the entire amount, less expenses, to the Council for its exclusive use to terminate the mortgage on the property at issue here; the Foundation's bylaws also provide that only board members of the Council may serve as board members of the Foundation, and they serve at the will of the Council; and any checks written by the Foundation are signed by the president and treasurer of the Council.

In light of the foregoing, the Foundation clearly was not a necessary party to the Council's administrative review action against the Department.

We also reject the Department's second argument that the trial court erred in finding that the Council is entitled to a charitable tax exemption on the subject property. The record discloses that the Department denied the Council's application for an exemption based on

its findings that the Foundation, rather than the Council, was the legal titleholder of the property from September 15 through December 31, 1986; the Foundation was not a charitable organization; and that the Foundation did not use the property for charitable purposes but rather leased the property with a view to profit to Illinois Bell during the involved period. On the other hand, contrary to the Department's findings, the trial court based its decision on its determination that the Council qualifies as a charitable institution under section 19.7 of the Revenue Act of 1939 and its use of two-thirds of the building during the taxable period involved was for charitable purposes (renovations to the building in preparation of providing its services to the public), it is entitled to the exemption as the equitable owner of the property, and that since the parking area of the property was not leased out and did not generate any income, that property is also exempt. We agree with the trial court, except as to its exemption on the parking lots.

■ Section 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 500.7) exempts the following property from taxation:

"All property of institutions of public charity, all property of beneficent and charitable organizations, whether incorporated in this or any other state of the United States, * * * when such property is actually and exclusively used for such charitable or beneficent purposes, and not leased or otherwise used with a view to profit * * *."

Implicit in the above statute are the requirements that an organization be a charitable one, that it is the owner of the property sought to be exempted, and that the property is actually being used for charitable purposes.

■ In the instant case, the Department argues that although it is well settled that our courts look beyond the mere holder of title to determine ownership (see *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479, 389 N.E.2d 540) and, therefore, an equitable owner of property may be entitled to a charitable exemption under section 19.7 of the Revenue Act (see *Christian Action Ministry v. Department of Local Government Affairs* (1978), 74 Ill. 2d 51, 383 N.E.2d 958), "the Council cannot be deemed the equitable owner for exemption purposes where the Council had no connection to the property during the tax period in question." Specifically, the Department asserts that the Council made no rental payments for its use of two-thirds of the building during the tax period involved and the building was being operated by the Foundation with a view to profit from the lease with Illinois Bell, thereby precluding application of a section 19.7 exemp-

tion. The Council counters that it is in fact the equitable owner of the property and therefore entitled to the section 19.7 exemption.

■■ We first briefly note that the Department does not assert that the Council is not a charitable organization, nor can it. As the trial court found, "[t]he Council is a comprehensive mental health center for poor and predominantly black families on Chicago's South Side. Its services are offered free of charge to the residents of the community. The Council operates a medical assessment service, a family systems service, an out-patient program for those with long term mental illness and a job placement program for mentally ill adults. Through its services, the Council strives to prevent or shorten hospitalization and enables clients to continue functioning as a part of the community so as to save the community money and result in better and more humanistic treatment. *** The Council likewise fulfilled all six guidelines for charitable exemption set forth in *Methodist Old Peoples Home v. Korzen*, 39 Ill. 2d 149 (1968). The Council 1) gives its benefits to an indefinite number of people; 2) derives no profit and has no shareholders or capital stock; 3) receives its funds mainly from public charity in the form of governmental grants and uses such funds exclusively to operate the mental health center; 4) dispenses its services to all people regardless of age, race, religion, national origin or income; 5) places no obstacles in the way of those seeking benefits; and 6) uses the property exclusively (primarily) for charitable purposes as discussed above. The Council qualifies as a charitable institution under 19.7 of the Revenue Act of 1939."

We further observe that *Southern Illinois University Foundation v. Booker* (1981), 98 Ill. App. 3d 1062, 425 N.E.2d 465, is analogous to the case here relative to whether the Council, as the equitable owner of the subject property, is entitled to a property tax exemption. In *Booker*, the court granted a tax exemption to Southern University Foundation, which was formed solely to hold title to school housing property and to lease it to Southern Illinois University. The determinative factors relied on by the court in granting the exemption to the university as the equitable owner of the property were: (1) the close relationship between the foundation and the university, reflected in the foundation's name and bylaws; (2) the fact that the foundation acquired title solely as a convenience with regard to long-term financing; (3) the existing identity between the foundation as the bare legal titleholder and the university as the holder of equitable title; and (4) the fact that the university controlled the property and received benefits from it. In the instant case, those factors are present, as we previously discussed in concluding that the Foundation is merely the

Council's alter ego, *i.e.*, the similarity of the Foundation's and Council's names; the fact that the Foundation was created solely to hold title to the Council's property and collect the income therefrom and surrender it to the Council, less expenses, for its use to repay the mortgage on the subject property; the fact that the Council enjoyed the right to the benefits of the property; the identity which exists between the Foundation as the bare legal titleholder and the Council as the holder of equitable title as they are composed of many of the same board members and the Foundation's board members are subject to the will of the Council; and the fact that checks written by the Foundation are signed by the president and treasurer of the Council. Accordingly, there is no question that the Council, as the equitable owner of the property, is entitled to the property tax exemption if it was using the property for its charitable purposes.

■ We have now reached the Department's argument that notwithstanding the fact that the Council is a charitable organization, it was not using the property for charitable purposes because it was not paying rent to the Foundation and the building was being used with a view to profit from the Illinois Bell lease. The Department's argument must fall in light of the simple fact that it cites to no authority, and we know of none, which makes rental payments by an equitable owner on its property a condition in obtaining a charitable tax exemption on the property. What the Department also fails to recognize is that although section 19.7 of the Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 500.7) requires that the property be used *exclusively* for charitable purposes, the word exclusively may be applied to the use of a portion of property for charitable purposes, which the Council was doing with two-thirds of the building by preparing it for its charitable purposes. (See *Weslin Properties, Inc. v. Department of Revenue* (1987), 157 Ill. App. 3d 580, 510 N.E.2d 564 (exemption allowed for property in the actual process of development and adaptation for exempt use).) We further note that the Council's renovation activities "connected" it with the property, as did its actions in signing the real estate sale contract with Northwestern and obtaining the $100,000 down payment from the Department of Mental Health to purchase the property.

■ Similarly, we find the Department's argument without merit that because the property was leased to Illinois Bell, and therefore being operated with a view to profit, no exemption on the property is appropriate. Nothing in the record indicates that a profit was being made from the Illinois Bell lease; apparently the Department merely assumed the Council/Foundation was making a profit because it was

receiving income in the form of Illinois Bell's monthly rental payment. We believe a review of the required monthly mortgage and escrow payments of the Council and the speculative expenditures for its construction staff dispels such an assumption in any event. For example, although Illinois Bell was paying $4,382 per month on its lease of the property, at nearly the same time the Council was required to pay a $5,599.16 monthly mortgage payment beginning October 1, 1986, it was required to pay an additional $4,000 per month into an escrow account, and it was incurring expenses for the work of its construction staff during the taxable period involved here. We therefore find it highly unlikely that the Council/Foundation was making any profit from the income derived from Illinois Bell's monthly rental payments. We further observe that even if a profit were to be made, by the terms of the Council's reimbursable grant agreement with the Department of Mental Health any profit was required to be remitted to it until the $100,000 grant was repaid. Accordingly, any profit would not technically be a profit made by the Council.

Finally, we note that the lease with Illinois Bell simply was not entered into with a view to profit. The Council/Foundation was forced to honor the lease, which had been in existence since 1955. The Council purchased the property solely to house its headquarters to extend its services to the community. No tax exemption was allowed for the portion of the building used by Illinois Bell during the taxable period involved and the fact that Illinois Bell allowed the Council to use the vacant portion of the building to begin renovation of the building while it nonetheless continued to pay its monthly rental does not change the fact that the two-thirds of the building used by the Council *was being used for a charitable purpose.* We believe, at most, Illinois Bell's generosity to the Council amounts to a nonmonetary contribution to the Council's objectives, rather than a monetary profit, as asserted by the Department. In other words, the reality of the situation here is that although Illinois Bell technically was paying 100% rent on three-thirds of the property, in effect, and by choice, it was paying 100% for one-third of the building and the two parking lots by allowing two-thirds of the building to be used by the Council for its charitable purposes rent free. To deny the Council an exemption because it was not paying anyone for the privilege of pursuing its charitable purposes at an earlier date it otherwise would have been unable to do is simply unsupportable by law or common sense.

In light of the foregoing, we therefore affirm the trial court's judgment in appeal No. 88—2991.

With respect to appeal No. 89—0427, we affirm in part, reverse in

part, and remand with directions. Since the Department did not file a brief in the appeal, and its brief in appeal No. 88—2991 does not address any issue with specificity as to the order appealed from, we address only the issue raised by the Council. The Council concedes that it should not have received an exemption for the subject property parking lots because Illinois Bell, and not it, used the lots, which apparently was not brought to the attention of the trial court or was the result of confusion in the evidence presented. Accordingly, we reverse that portion of the order pertaining to the exemptions for the parking lots and direct that the trial court modify its order by striking that portion of the order allowing exemptions in the amount of $290.70 for the rear parking lot and $109.68 for the adjacent parking lot.

Appeal No. 88—2991, Affirmed.
Appeal No. 89—0427, Affirmed in part; reversed in part and remanded with directions.

LORENZ and PINCHAM, JJ., concur.